Jerome ROACH

v.

**Dr. Albert M. KLIGMAN, individually and as President of Ivy Research Laboratories, Inc., et al.**

Civ. A. No. 73–2428.

United States District Court,
E. D. Pennsylvania.

April 30, 1976.

David Rudovsky, Philadelphia, Pa., for plaintiff.

Thaddeus J. Bartkowski, Asst. City Sol., Philadelphia, Pa., for defendants Aytch, Galeone, Sprague, Ray, Jr., Ritter, Needleman, Stack, Jr., Wnukowski, Holt, III, and City of Philadelphia.

## OPINION

LUONGO, District Judge.

This is a civil rights action brought under 42 U.S.C. §§ 1983, 1985 and 1988, and the Fourth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. The civil rights claim is joined with a claim in trespass based on Pennsylvania law. Jurisdiction is grounded on 28 U.S.C. §§ 1343(3), (4), § 1331 and pendent jurisdiction. The plaintiff, Jerome Roach, was a detentioner at Holmesburg Prison in Philadelphia when the events alleged to constitute his cause of action occurred. Plaintiff's claims against defendants Dr. Albert M. Kligman, Solomon McBride, Luther M. Mitchell and Ivy Research Laboratories, Inc. (hereinafter Ivy Research defendants) have been resolved by settlement. The remaining defendants, Louis S. Aytch, Superintendent of Philadelphia County Prisons, the individual members of the Board of Trustees of Philadelphia County Prisons (hereinafter sometimes referred to as Prison defendants), and the City of Philadelphia have moved for summary judgment. I will grant the motion for summary judgment as to the civil rights claim, and I will decline to exercise pendent jurisdiction over the plaintiff's state law tort claim against these defendants.

## I.

The complaint alleges:

In March 1973, while being detained in Holmesburg Prison awaiting trial on charges as to which he was later acquitted, Roach participated in a medical experiment conducted by Ivy Research. He was induced to participate because he needed money "to pay for minimal needs and comforts" while he was incarcerated. He was advised by one of the Ivy Research defendants that the experiment required him to take a "temperature pill" and that he would suffer no adverse effects. After four days of participation, however, Roach developed various symptoms of physical illness including sore throat, sore joints, fever, nausea, and sores and rashes. The complaint alleges further that Roach was improperly treated for these symptoms by the prison doctor who prescribed penicillin without knowing or inquiring if Roach was participating in an experiment. By March 29, 1973, Roach's condition grew serious enough for the defendants to arrange his transfer to Philadelphia General Hospital where he remained for several weeks. At the hospital, Roach was informed that his illness resulted from the experiment, that he had been given pills different from those described to him when he consented to the experiment, and that he had permanent liver damage.

After the hospital stay, Roach spent a few days in the prison infirmary and was then returned to his cell where, "because of inadequate and unconstitutional conditions, including water in his cell which leaked through his roof and grossly inadequate medical treatment," his condition grew worse. The complaint charges that the in-

adequate medical treatment lasted for a period of two weeks in June of 1973 when he was denied medical treatment and medication.

The Prison defendants and the City are said to have deprived Roach of his civil rights by authorizing Ivy Research to use the facilities at Holmesburg without adequate safeguards to insure that Roach gave informed consent to the experiment, and by failing to provide adequate facilities to screen, monitor and treat the plaintiff to avoid serious illness from the experiment. Moreover, Prison defendants are charged with having coerced Roach into participating in the experiment by failing to furnish him and other inmates the "basic, minimal needs and necessities for institutional life," or to afford alternative opportunities to earn money to provide these necessities for themselves. Finally, Roach complains that Prison defendants failed to provide adequate treatment and quarters after he became ill from the experiment.

In short, Roach claims that his civil rights were violated by Prison defendants in the following way:

1. Prison defendants failed to supply the "minimal needs and necessities for institutional life" or alternative sources of income to provide these needs for himself. This coerced him into participating in the experiment.

2. The experiment was so negligently monitored by Prison defendants that when he became ill during the experiment, the prison doctor did not know he was participating in the experiment and treated him improperly, causing aggravation.

3. When he returned from PGH, he was subjected to "inadequate and unconstitutional cell conditions," which caused further aggravation.

4. On at least a few occasions he was denied medical treatment after returning from PGH.

5. Finally, there are allegations of conspiracy and malice.

Roach's pendent claim sets forth the same facts, which he contends render Prison defendants liable in trespass.

## II.

■ In this circuit, plaintiffs in civil rights cases must plead facts with specificity, especially where the pleadings, as here, are drafted by competent and experienced counsel.[1] *Rotolo v. Borough of Charleroi*, 3 Cir., 532 F.2d 920 (1976). The plaintiff cannot rest on vague, conclusory allegations. He must plead the facts upon which the claim is based; he must spell out the unlawful conduct complained of.

■ When a motion for summary judgment is made and supported by affidavits, plaintiff may not rest upon "the mere allegations or denials of his pleading," he must by affidavits or otherwise, set forth specific facts showing there is a genuine issue for trial. Federal Rule of Civil Procedure 56(e).

The record in this case consists of the complaint; the defendants' answers; material provided by the defendants and the plaintiff in response to interrogatories and requests for production of documents; depositions of plaintiff Roach, defendants Kligman, McBride, and Mitchell, witnesses Dr. Herbert W. Copeland and Wayne Brown; and an affidavit of defendant Aytch with a consent form attached as an exhibit. A review of this record convinces me that the plaintiff has failed to present any facts which can amount to a deprivation of his constitutional rights, and that as to the civil rights claim there is no genuine issue for trial.

At the outset, it should be noted that it is difficult to perceive at what point the constitutional deprivation is alleged to have occurred. There are three separate points in time covered by the complaint.

The first is the time before Roach entered the experiment. At this point he is alleged to have experienced "coercion" be-

---

1. Roach is represented by David Rudovsky, Esquire, an eminent practitioner in the field of constitutional law.

cause the prison failed to supply him with "minimal needs and necessities for institutional life," or with alternative means of earning money to purchase these needs. At oral argument on the motion for summary judgment, plaintiff's counsel identified these minimal needs as soap, toothpaste, stamps and writing materials.

The second time frame is during the experiment. In this period, the Prison defendants and the City are said to be guilty of gross negligence in the supervision of Ivy Research. The basis for this charge is the administration of penicillin by the prison doctor who did not know that Roach was involved in the experiment.

The last point in time is when Roach was returned to the prison after his stay at Philadelphia General Hospital. He was then allegedly subjected to a cold and leaky cell, and was denied medication or treatment on at least several occasions.

It is not clear whether plaintiff contends that each of these events separately represents a constitutional deprivation, or whether he is complaining that the combination of them violates his constitutional rights.

■ Prison officials have wide discretionary authority to make reasonable rules and regulations for the operation of prisons. *Wilson v. Prasse,* 325 F.Supp. 9, 12 (W.D.Pa. 1971), aff'd, 463 F.2d 109 (3d Cir. 1973). When a claim against prison officials is based on improper medical treatment, it must depict conduct that is so cruel and unusual as to present a colorable Eighth Amendment claim. *Gittlemacker v. Prasse,* 428 F.2d 1 (3d Cir. 1970). Federal courts follow stringent standards, and simple malpractice is not actionable as an Eighth Amendment deprivation. *Kontos v. Prasse,* 444 F.2d 166 (3d Cir. 1971); *Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971). The act or omission by the official must either be intentionally injurious, reckless, callous, grossly negligent, shocking to the conscience, unconscionable, intolerable to fundamental fairness, or barbarous. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183, 190 (1952); *Ford v. Board of Managers of New Jersey State Prison,* 407 F.2d 937, 940 (3d Cir. 1969); *Gittlemacker, supra; Martinez, supra.* The record must show, at least arguably, an intent to harm the inmate, or failure to treat injuries and illnesses so severe and obvious as to require immediate medical attention. *Hoitt v. Vitek,* 497 F.2d 598, 601 (1st Cir. 1974); *United States v. Fitzgerald,* 151 U.S.App.D.C. 206, 466 F.2d 377, 380 (1972); *Martinez, supra.* Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim. *Walnorch v. McMonagle,* 412 F.Supp. 270 (E.D.Pa.1976); *Brown v. Cliff,* 341 F.Supp. 177 (E.D.Pa.1972). See generally Annot., 51 A.L.R.3d 111 (1973).

Cases holding there was a sufficient allegation of cruel and unusual punishment based on improper medical care highlight the lack of sufficiency of the facts in this record. In *Martinez, supra,* after an operation on his right leg in a civilian hospital, the prisoner was handcuffed by two prison guards, forced to walk out of the hospital, returned to his cell, forced to stand and denied medication, all in "blatant disregard" of the surgeons' instructions that he lie flat on his back, move his legs as little as possible and receive demarol and morphine for pain.

In *Sawyer v. Sigler,* 445 F.2d 818 (8th Cir. 1971), the District Court "may have approached the outer limits of constitutional requirements" when it granted equitable relief to a prisoner with cancer who was receiving no treatment except pain killers.

In *Ames v. Kuehnle,* 425 F.2d 224 (5th Cir. 1970) an allegation that the prisoner was denied proper medical treatment with the "true intention of imposing cruel and unusual punishment" in retaliation for reporting improper medical procedures followed by the defendant-doctor, was held to be sufficient.

In *Wood v. Maryland Casualty Co.,* 322 F.Supp. 436 (W.D.La.1971) a denial of medical aid for an indefinite period after suffering severe burns, and then, after treatment

in a civilian hospital, a denial of further medical care in prison stated a claim under the Eighth Amendment.

In *Newman v. Alabama*, 349 F.Supp. 278 (M.D.Ala.1972), *aff'd in part*, 503 F.2d 1320 (5th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), a class action seeking declaratory and injunctive relief, relief was granted where the record showed prison medical facilities so grossly understaffed and inadequate that there was frequently a total absence of medical personnel, a total absence of sick calls, and a total unavailability of such elementary medications as aspirin.

In stark contrast to these cases is *Brown v. Cliff, supra*, in which the court granted summary judgment against the plaintiff when the record showed that prison doctors examined the plaintiff's gunshot wound on several occasions, but failed to detect infection.

As in the *Brown* case, the record here shows at most negligence, or inadequate medical treatment. The basis for the charge is that the prison doctor administered penicillin to Roach, and that penicillin should not have been prescribed in light of the pills being taken in the experiment. The record does show that the prison doctor was not informed which inmates were involved in medical experiments. (Deposition of Dr. Albert M. Kligman, page 28). But Roach's deposition (pages 18, 52) reveals that he merely complained to the prison doctor of "a sore throat and I was hurting." He did not tell the doctor he was taking other medication (page 53). Roach had been advised by Luther M. Mitchell, one of the Ivy Research defendants, not to take any other medication "unless he tells you and he has to know what it is" (page 53). Plaintiff's deposition further reveals that after the prison doctor prescribed penicillin, but before it was administered, the plaintiff informed Mitchell penicillin had been prescribed, and "he [Mitchell] didn't say anything" (page 54).

As to the other claim of inadequate medical treatment, the alleged denial of medical care when the plaintiff returned from PGH, Roach testified on deposition that sick call was held three times a day (page 71); sometimes he missed sick call because he was sleeping, or because he didn't feel like waiting in line to be let out of the cell block (page 72); but whenever he was in line, he was not denied treatment (page 72).

■ In short, the record plainly refutes the claim of the total denial of medical care, or the intentionally injurious, reckless, callous or unconscionable conduct cognizable under the Eighth Amendment. It shows at most negligence in the handling, diagnosis and treatment of Roach's ills, but not a denial of a federally protected right. See, *Nettles v. Rundle*, 453 F.2d 889 (3d Cir. 1971); *United States ex rel. Johnson v. Prasse*, 450 F.2d 946 (3d Cir. 1971); *Commonwealth ex rel. Gatewood v. Hendrick*, 368 F.2d 179 (3d Cir. 1966), *cert. denied*, 386 U.S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797 (1967).

■ Similarly, Roach's claim of coercion based on failure to supply minimal needs and comforts when these "needs" consist of soap, toothpaste, stamps and writing materials is so far short of a constitutional deprivation as to be scarcely worthy of consideration. Cases finding a denial of minimal needs and comforts falling below the minimum standards of the Eighth Amendment generally involve "strip" cells, used for reasons involving prison discipline, and are illustrated by *LaReau v. MacDougall*, 473 F.2d 974 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973), in which "the indecent conditions that existed in this Somers prison strip cell seriously threatened the physical and mental soundness of its unfortunate occupant." *Id.* at 978. See Annot., 51 A.L.R.3d 111, § 17 (1973).

While there may be circumstances in which a denial of access to soap and toothpaste might state a claim under § 1983, *Schmitt v. Crist*, 333 F.Supp. 820 (E.D.Wis. 1971),[2] Roach does not claim that these

---

**2.** In *Schmitt*, besides being denied the use of soap and a toothbrush, the prisoner allegedly was chained to a steel bed and denied food and water for two days.

items were denied to him; he only claims that they were not supplied to him. The record reveals that he was free to purchase these items at the commissary (deposition of Solomon McBride, page 43). And contrary to the claim that no alternative sources of income were available to plaintiff, the record shows that other job opportunities were offered to him and he declined to be considered for them (plaintiff's deposition at page 78).

■ Similarly, the claim that the conditions in the cell violated constitutional standards cannot be sustained. The only thing in the record on this subject is Roach's testimony that the cell was cold and leaky and that it was shared by two prisoners. (Plaintiff's deposition at pages 74–78). There is no evidence that Roach was subjected to the kind of conditions described in *Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971), where it appeared the cells were overcrowded, and infested with vermin, and the bed coverings and blankets were filthy, that those charged with serious offenses were confined with those guilty of minor offenses, that prisoners' mail was read and censored, that there was traffic in weapons and narcotics, that there was constant threat of sexual assault, and that prisoners were randomly selected by guards for beatings with clubs, and that in addition to all these facts the cells leaked and the medical staff was inadequate. See also, *Hendrick v. Jackson,* 10 Pa.Cmwlth. 392, 309 A.2d 187 (1973).

■ Cell conditions which give rise to Eighth Amendment deprivations are generally those which are degrading to human dignity or which serve to break the spirit. *LaReau v. MacDougall, supra.* See also *Trop v. Dulles,* 356 U.S. 86, 100, 78 S.Ct. 590, 597, 2 L.Ed.2d 630, 642 (1958). The violation appears in a combination of conditions such as those recited in the *Jackson* and *Bryant* cases, not the isolated fact of a cold and leaky cell. The claim here is only that the cell conditions aggravated Roach's illness, not that they caused it. The record shows that plaintiff complained to the pris-

on doctor about the cell, but he did not ask anyone at the prison responsible for assignment of cells to transfer him to another cell (plaintiff's deposition at pages 74–78). Moreover, the unrefuted affidavit of defendant Aytch states that he had given orders that if any cell leaked, the inmates were to be removed and the condition repaired (Aytch affidavit at para. 18–19). Under these circumstances, the leaky cell, standing alone, cannot constitute a constitutional deprivation.

There are cases which hold that cruel and unusual punishment can result from the cumulative impact of several prison conditions. See Annot., 51 A.L.R.3d 111, §§ 24, 25 (1973). The totality of these conditions must nevertheless be "shocking to the conscience." *Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir. 1971); *Sostre v. McGinnis,* 442 F.2d 178, 191 (2d Cir. 1971), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

■ In this case, the combination of conditions said to have violated Roach's rights under the Eighth Amendment are: failure to supply soap, toothpaste, stamps and writing materials; failure to provide jobs within the prison at wages comparable to what could be earned in medical research programs to enable inmates to buy these materials; failure to adequately supervise the experiment; failure to provide proper medical treatment; and failure to provide a warm, dry cell. I think it is clear beyond doubt that these conditions, taken individually or in combination, do not amount to the disgusting and degrading conditions which the cases have condemned.

It may well be, as Roach contends, that as a pretrial detentioner, he was entitled to a higher standard of treatment under the Eighth Amendment than that afforded actual convicts. *Detainees of Brooklyn H. of Det. for Men v. Malcolm,* 520 F.2d 392, 397 (2d Cir. 1975). Nevertheless, something more "cruel and unusual" is required than the kind of treatment which appears in this record. *Howell v. Cataldi,* 464 F.2d 272, 279 (3d Cir. 1972).

## III.

Even if a constitutional deprivation had been made out, no claim is stated against the named Prison defendants. To make out a case under § 1983, the plaintiff must show actual participation in the unlawful conduct, or actual knowledge of and acquiescence in that conduct. *Goode v. Rizzo*, 506 F.2d 542 (3d Cir. 1975), *rev'd on other grounds*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974); *Curtis v. Everette*, 489 F.2d 516 (3d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974).

In his affidavit, defendant Aytch denies any personal knowledge of the events leading to Roach's complaint. This is not disputed by any countervailing evidence submitted by the plaintiff. Instead, Roach argues that the close supervision and control Aytch claims to exercise over medical experiments at Holmesburg prison is sufficient evidence of personal involvement.

The difficulty with this argument is, if the plaintiff does not rely on some direct participation by the defendants in the improper medical treatment, the defendants may well be cloaked in qualified official immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The test for whether official immunity applies is whether the defendants knew or reasonably should have known that the action they took within the sphere of their official responsibility would violate the constitutional rights of the plaintiff, or whether they took action with the malicious intention to cause a deprivation of constitutional rights or other injury to the plaintiff. *O'Connor v. Donaldson*, 422 U.S. 563, 577, 95 S.Ct. 2486, 2494–2495, 45 L.Ed.2d 396, 407–408 (1975).

There is no evidence in the record of malice on the part of these defendants. Quite to the contrary, the record shows that the primary purpose of allowing the medical experiments is to provide a source of income for the inmates. (Aytch affidavit, para. 19). This particular test was reviewed by an outside doctor, before approval. (McBride deposition, page 40). Finally, the nature of the claim itself is medical, and yet none of the Prison defendants is a doctor. Nothing in the record suggests that the Prison defendants knew or had reason to know that the prison doctor, the guards, or Ivy Research would even be negligent toward the plaintiff, let alone subject him to cruel and unusual punishment. The most that can be said of the Prison defendants on this record is that they were negligent in their supervision. It is not enough for the plaintiff to characterize this negligence in a conclusory fashion as "gross" or "reckless" or "malicious", and then claim this gives rise to a constitutional deprivation. Section 1983 is not designed to be a "font of federal tort law" and the fact that a tort may have been committed by state officials does not mean a federal right has been invaded. *Paul v. Davis,* —— U.S. ——, ——, 96 S.Ct. 1155, 1159–1160, 47 L.Ed.2d 405, 412, 44 U.S.L.W. 4337, 4339 (1976).

## IV.

Since there is no constitutional deprivation to be found in the record of this case, I will also decline to exercise pendent jurisdiction over the state claim for trespass. Pendent jurisdiction is a doctrine of discretion, not of the plaintiff's right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966); *Moor v. County of Alameda*, 411 U.S. 693, 712, 93 S.Ct. 1785, 1797, 36 L.Ed.2d 596, 611, reh. denied, 412 U.S. 963, 93 S.Ct. 2999, 37 L.Ed.2d 1012 (1973). Even though there is power to hear pendent state claims, I will, as a matter of discretion, decline jurisdiction because the federal claims have been dismissed, and because of the plain predominance of state issues. See *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139, 16 L.Ed.2d at 228; *Smith v. Spina*, 477 F.2d 1140, 1143 (3d Cir. 1973).

In a letter dated March 22, 1976, plaintiff's counsel has raised a claim of jurisdiction against the defendant City of Philadelphia under 28 U.S.C. § 1331, while conced-

ing that no jurisdiction would lie against the City under 28 U.S.C. § 1343(3), (4) and 42 U.S.C. § 1983. The Third Circuit has recently indicated that § 1331 jurisdiction may well lie against subdivisions of states for constitutional deprivations, *Skehan v. Board of Trustees of Bloomfield State College,* 501 F.2d 31 (3d Cir. 1974), *vacated,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Rotolo v. Borough of Charleroi, supra,* notwithstanding the fact that such entities cannot be made parties to a suit under § 1983. *Moor, supra,* 411 U.S. at 698–710, 93 S.Ct. at 1789–1796, 36 L.Ed.2d at 603–610.

It is not clear from those opinions whether the possible tension between the jurisdictional statute, 28 U.S.C. § 1331, and the cause of action statute, 42 U.S.C. § 1983, was called to the court's attention. However that may be, it is not necessary to resolve the question in this case because I am granting summary judgment for failure to state a cause of action, either under § 1983, or directly under the Eighth Amendment, and not on jurisdictional grounds.

## V.

In conclusion, the record in this case establishes precisely the opposite of what the plaintiff contends at each of the three critical points in time when a constitutional deprivation might have occurred.

There was no "coercion" to enter into the medical experiment for three reasons. First, the uncontradicted affidavit of the defendant Aytch establishes that the primary purpose of the medical experiments was to provide a source of income for inmates. Second, while plaintiff may not have been supplied with certain "minimal needs and comforts" by the defendants, neither was he denied access to them. He could purchase them at the prison commissary. Third, he was offered other opportunities to earn money but he declined to consider them.

There was certainly no denial of medical care once Roach became ill during the experiment, and there is nothing to indicate an intent to harm Roach, or a callous indifference to his condition. When he complained to the prison doctor of a sore throat, he was given penicillin. That may have been inappropriate treatment under the circumstances, but it hardly amounts to callous indifference or reckless disregard of the plaintiff's welfare. Similarly, although Prison defendants' failure to supervise the experiment more closely might be characterized as negligence, it cannot amount to "cruel and unusual punishment" where the nature of the experiment had been approved by an independent doctor.

Finally, when Roach returned from PGH, his own deposition conclusively establishes that he was not denied medical treatment, but that he missed sick call because he was asleep or did not want to stand in line. As to the cold and leaky cell, the plaintiff's deposition establishes that he did not ask to be moved; the Aytch affidavit establishes that if the plaintiff was in such a cell, Aytch did not know about it and it was contrary to his instructions.

For all of the foregoing reasons, the motion of the Prison defendants and the City of Philadelphia for summary judgment will be granted as to the civil rights and constitutional claims. The pendent state law claims against all said defendants will be dismissed.