Jimmie Lee MITCHELL, Plaintiff,

v.

Edward J. HENDRICKS et al.

Civ. A. No. 72–2184.

United States District Court,
E. D. Pennsylvania.

April 18, 1977.

Thomas L. Holzman, Inmate Legal Assistance Program University of Pennsylvania Law School, for plaintiff.

Mark N. Cohen, Francis R. Coyne, John L. Jenkins, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

In this civil rights action, this Court is presently considering alternative motions to dismiss or for summary judgment on behalf of the named defendants in regard to both federal and pendent state claims.

Invoking 42 U.S.C. §§ 1983 and 1985, and their jurisdictional counterpart, 28 U.S.C. § 1343(3) plaintiff filed suit *pro se* with the Clerk of Court on November 3, 1972. Plaintiff was granted leave to proceed *in forma pauperis*, and the formal complaint was filed on January 24, 1973. Plaintiff's cause of action is based on the alleged failure of certain prison doctors and officials to render medically prescribed neuromuscular therapy during the term of his imprisonment, which allegedly resulted in the permanent loss of use of his arm. Plaintiff's injury occurred while playing basketball on November 3, 1969 at Holmesburg Prison. He was treated for a brachial plaxus injury on an inpatient basis at Philadelphia General Hospital (PGH) for approximately five months until April 13, 1970. Plaintiff thereafter was returned to Holmesburg until he was transferred on June 8, 1970 to the State Correctional Institution at Graterford (SCIG). On November 10, 1970, he was transferred to the State Correctional Institution at Pittsburgh (SCIP) and remained there until he was paroled on January 9, 1971. During this period of time, plaintiff allegedly received none of the treatment prescribed by PGH doctors to rehabilitate his arm.

Defendants raise a number of issues, which will be discussed below.

## I. THE STATUTE OF LIMITATIONS.

 The defendants assert that plaintiff's cause of action is barred by the statute of limitations.[1] In civil rights cases, the statute of limitations is "that which the state would enforce had the action seeking similar relief been brought in State Court." *Henig v. Odorioso*, 385 F.2d 491, 493 (3d Cir. 1967), cert. denied 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). In Pennsylvania, the statute of limitations for personal injury actions is two years. 12 P.S. § 34. However, there is a distinction to be drawn between the time in which a civil rights action may be brought and the time of accrual of a civil rights action, i. e. the date at which time the limitations period begins to run. The latter is governed solely by federal law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Kaiser v. Cahn*, 510 F.2d 282 (2d Cir. 1974); and *Donaldson v. O'Connor*, 493 F.2d 507 (5th Cir. 1974) vacated and remanded on other grounds. *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Cox v. Stanton, supra* at 50 citing *Young v. Clinchfield R.R. Co.*, 288 F.2d 499, 503 (4th Cir. 1961).

 In determining what is the basis of plaintiff's action, it should be emphasized that an "essential element of an actionable civil rights complaint is the establishment of a *constitutional* deprivation." *Gittlemacker v. Prasse*, 428 F.2d 1, 5 (3d Cir. 1970) (emphasis original). *Gittlemacker* concerned, *inter alia,* the degree of gravity necessary for allegations of medical malpractice to attain constitutional proportions. It was held that more than mere tortious conduct must be alleged.

It is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim is presented. [*Gittlemacker* at 6]

This standard was described with more particularity in the recent Supreme Court case of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976):

[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute a "wanton infliction of unnecessary pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, *a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.* It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment (emphasis supplied).

See also *Fear v. Commonwealth*, 413 F.2d 88 (3d Cir.), cert. denied, 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234 (1969) and *Commonwealth ex rel. Gatewood v. Hendrick*, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797 (1967). The case of *Thomas v. Pate*, 493 F.2d 151 (7th Cir. 1974), cert. denied sub nom. *Thomas v. Cannon*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974), also spoke in terms of the degree of the alleged harm and, in deciding whether or nor medical care was essential, found the test to be:

1. The defendants also contend that this Court lacks subject matter jurisdiction, arguing that the plaintiff has set forth claims which at best amount to no more than medical malpractice and negligence, and hence do not rise to the constitutional level required under § 1983. Much of the discussion of this issue is embodied in the analysis of the statute of limitations

question. Suffice it to state at this time that plaintiff has indeed set forth a colorable Eighth Amendment violation with regard to Drs. Tucker and Hamburg, thus giving this Court subject matter jurisdiction under 28 U.S.C. § 1343(3). The further discussion of this defense as it pertains to defendant Rundle will be set forth below.

. . . whether it had been proved that a physician exercising ordinary skill and care at the time of the request for medical care would have concluded that the symptoms of the prisoner evidenced a serious disease or injury; that the potential for harm by reason of delay or denial of medical care was substantial; *and that such harm did result.* (Emphasis supplied). *Thomas* at 158.

I am persuaded that in the context of this case, it is the allegation of the permanency of the injury which is important. As I stated in the case of *U. S. ex rel Ingram v. Montgomery County Prison Board,* 369 F.Supp. 873, 874 (E.D.Pa.1974), in a civil rights action the plaintiff must allege an injury from denial of medical care which results in "undue suffering or *permanent residual injury.*" (Emphasis supplied). Other courts have used similar standards, see, e.g. *Cox v. Stanton, supra* at 59 (permanent deprivation of ability to bear children); *Thomas v. Pate, supra* at 158 (substantial harm); *Stiltner v. Rhay,* 371 F.2d 420, 421 (9th Cir. 1967) (tangible residual injury). It follows from these cases that the applicable time of accrual in the instant case is when plaintiff knew or should have known that his arm was or would become permanently non-regenerative. *Young v. Clinchfield, supra.*

I have decided that plaintiff, on the record as it presently stands, cannot be charged as a matter of law with knowledge of the permanent nature of his injury before January 9, 1971, the date he was informed by PGH doctors that any further treatment of his arm would be futile. In support of this conclusion, I regard the case of *Cox v. Stanton, supra,* to be controlling. There, plaintiff, under duress, consented to what was ostensibly a temporary sterilization, but the surgeon instead performed an irreversible sterilization. The plaintiff believed the sterilization to be reversible until she was informed otherwise by a gynecologist five years later. Suit was filed three years thereafter. The Court concluded that the plaintiff's suit was not barred by the three year statute of limitations because her cause of action did not accrue until she discovered the permanent effects of the operation.[2]

The factual setting of *Cox* is indistinguishable from that of the instant case. Therefore, if in fact the plaintiff thought that his condition was temporary and curable and did not or should not have known of the permanency of his condition until so informed by physicians, plaintiff's cause of action could not accrue until the date he was given that information on or about January 9, 1971. If this be the case, plaintiff's *pro se* complaint, filed with the Clerk of Court less than two years after this date, was timely.[3]

Conversely, however, I cannot on the basis of the present record conclude that, as a matter of law, plaintiff was ignorant of the consequences of the alleged lack of treatment before the date of his parole. For instance, the trier of fact may at a later stage of this litigation properly conclude that plaintiff's admissions in his deposition, wherein he stated that he knew that without treatment his arm would worsen, indicated that plaintiff knew or should have known after his first stay at PGH that, absent therapy, irreversible damage would ensue. Alternatively, a date in the interim between his release as an in-patient and the date of his parole may be found to be controlling. Depending, then, on when the trier of fact fixes the date of constructive or actual knowledge of the basis of plaintiff's cause of action, the plaintiff's action may be barred.

As a result, I must at this time deny the defendants' motion on the issue of the stat-

---

2. Also see *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Young v. Clinchfield, supra;* and *Farmer v. Pennsylvania R.R. Co.,* 311 F.Supp. 1074 (W.D.Pa.1970).

3. As I stated in *Mitchell v. Hendricks,* 68 F.R.D. 564 (E.D.Pa.1975), the statute of limitations is tolled by receipt of the complaint by the Clerk of Court. Thus, defendants' contention that plaintiff violated the statute of limitations by filing his formal complaint on January 24, 1973, is incorrect.

ute of limitations because I am ". . . unable, at this stage of the litigation, to express any opinion on the question of whether plaintiff should reasonably have discovered . . ." his prognosis before January 9, 1971. *Gattis v. Chavez*, 413 F.Supp. 33, 40 (D.S.C.1976). I am cognizant of the potential difficulty that these defendants may have in preparing a defense to a claim as remote in time as this, but I believe that on balance the course I now take is preferable to completely barring this plaintiff's cause of action when the delay in discovering the consequences of alleged lack of essential medical treatment may have been excusable. Rather, I prefer to adopt the approach taken by the court in *Gattis, supra,* that is: If the defendants can prove at any time during the trial that plaintiff actually or reasonably possessed the requisite knowledge at a time sufficiently prior to January 9, 1971, the statute of limitations will then apply and result at that time in the barring of the plaintiff's cause of action.

■ The two year Pennsylvania statute of limitations, 12 P.S. § 34, applies to the plaintiff's pendent state claims as well. *Polite v. Diehl*, 507 F.2d 119 (3rd Cir. 1974); *Gozdanovic v. Civil Service Commission of Pittsburgh*, 361 F.Supp. 504 (W.D.Pa.1973). However, as before, it is the time of accrual of this pendent cause of action which is the relevant factor. Under Pennsylvania law, "the statute begins to run from the time the plaintiff discovers the injury or the cause of his harm or reasonably should have discovered such injury or cause." *Huber v. McElwee-Courbis Construction Co.,* 392 F.Supp. 1379, 1382 (E.D.Pa.1974), *citing Smith v. Bell Tel. Co. of Penna.,* 397 Pa. 134, 153 A.2d 477 (1959). *Accord: Raymond v. Eli Lilly & Co.,* 412 F.Supp. 1392, 1399 (D.N.H.1976); *Gemignani v. Phila. Baseball Club,* 287 F.Supp. 465 (E.D.Pa. 1967); *Prince v. Trustees of University of Pennsylvania,* 282 F.Supp. 832, 840 (E.D.Pa. 1968); *Carney v. Barnett,* 278 F.Supp. 572, 575 (E.D.Pa.1967); *Daniels v. Beryllium Corp.,* 227 F.Supp. 591, 595 (E.D.Pa.1964); and *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963).

As was stated in *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959):

". . . [A] right of action accrues only when injury is sustained by the plaintiff,—not when the causes are set in motion which ultimately produce injury as a consequence . . ."
*Citing: Foley v. Pittsburgh-Des Moines Co.,* 363 Pa. 1, 68 A.2d 517 (1949).

The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.

*Ayers* at 287 and 290, 154 A.2d at 790. See also *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974).

Plaintiff contends that the harm which he suffered was not "physically objective and ascertainable" until he was diagnosed subsequent to his parole, and therefore the limitations period should begin to run at that time. It must also be considered whether or not this tort was a continuing one, thus fixing the time of accrual at the date on which the plaintiff knew or should have known of his injury. In this regard the following rules are controlling:

[Where] a plaintiff has full knowledge of the illness brought about by defendant's course of conduct the injury has been done and the statute of limitations begins to run at that time. The subsequent continuance of the wrong cannot serve to toll the running of the statute of limitations on the earlier injury of which the plaintiff has knowledge. *Daniels v. Beryllium,* 211 F.Supp. 452, 455–56 (E.D.Pa. 1962).

and:

[U]ntil one discovers, or through reasonable diligence should discover, the misdiagnosis or improper procedure used by the physician, he does not have reason to know that he has been injured, and thus under the language of the Pennsylvania cases the statute would not run. *Huber v. McElwee-Courbis Constr. Co.,* supra, at 1383.

Therefore, the key factor in this determination is the date on which plaintiff had full knowledge of the existence or likelihood of

his permanent injury. On the record as it now stands, I am unable to conclude that plaintiff did in fact have this knowledge before January 9, 1971. It is, as a result, proper to leave the limitations issue of the pendent state claim to the trier of fact, following the rule of *Gattis v. Chavez, supra.* However, it is equally true here that during the trial, if the defendants can prove that plaintiff possessed actual or constructive knowledge so as to establish an earlier time of accrual sufficient to bar the pendent cause of action, the plaintiff's state claim will then be dismissed.

## II. FAILURE TO STATE A CLAIM.

Alternatively, the defendants submit that their individual lack of personal involvement regarding plaintiff's claim, and the judicially imposed proscription against the doctrine of *respondeat superior,* in civil rights actions bars this action as to them. Defendants Brierley and Rundle assert as well that they are immune from suit under the doctrine of sovereign immunity.

As I stated earlier in this case *Mitchell v. Hendricks,* (E.D.Pa. C.A. No. 72–2184 Opinion filed February 3, 1976, at page 2) when I granted defendant Hendricks' Motion for Summary Judgment: "The weight of authority in the federal courts makes it manifestly clear that the doctrine of *respondeat superior* has no applicability, in its traditional sense to the majority of claims for monetary damages under the Civil Rights Act." Rather, it is necessary to establish actual personal knowledge or involvement, the personal ordering of a subordinate to do acts, or actual knowledge of the acts of subordinates and acquiescence therein if liability of a superior, in a civil rights action is to be found. See, e. g., *Rizzo v. Goode,* 506 F.2d 542 (3d Cir. 1974) rev'd on other grounds, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975); *Bracey v. Grenoble,* 494 F.2d 566 (3rd Cir. 1974); *Brown v. Sielaff,* 474 F.2d 826 (3d Cir. 1973); *Roach v. Kligman,* 412 F.Supp. 521 (E.D.Pa.1976); *Fialkowski v. Shapp* 405 F.Supp. 946 (E.D.Pa.1975); *Thompson v. Montemuro,* 383 F.Supp. 1200 (E.D.Pa.

1974); and *Downs v. Dept. of Public Welfare,* 368 F.Supp. 454 (E.D.Pa.1973).

It is additionally necessary for the plaintiff in civil rights actions to avoid broad and conclusory allegations that would perhaps suffice in other civil causes of action. See, e. g., *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir. 1976); *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.), cert. denied 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); and *Negrich v. Hohn,* 379 F.2d 213 (3d Cir. 1967). Under the test of the *Rotolo-Kauffman-Negrich* line of cases, a high degree of specificity is required that goes beyond mere notice pleading. Thus, the plaintiff in the instant case must allege the personal involvement of each defendant with a sufficient degree of particularity.

As to the defendants Tucker and Hamburg, I have concluded, after consideration of the amended complaint, that their personal involvement has indeed been alleged with the requisite degree of specificity. Plaintiff alleges that Dr. Tucker was the physician in charge of plaintiff's medical treatment at Holmesburg and that Dr. Tucker knew or should have known of the alleged need for therapy as ordered by PGH doctors. Further, plaintiff sets forth the specific dates and the number of occasions per week on which he allegedly sought and was denied treatment and/or therapy. That Dr. Tucker had the power to arrange for out-patient treatment is also supported by the record. (See Exhibit E to Defendant's Memorandum in Opposition.)

With respect to Dr. Hamburg, the consulting physician, allegations of a nature similar to those concerning Dr. Tucker are asserted with the same degree of specificity and are adequately corroborated by the record. I am therefore satisfied that there are factual issues as to the personal involvement of both Dr. Tucker and Dr. Hamburg which preclude the granting of summary judgment. The summary judgment motions of these defendants is therefore denied.

I turn now to the motions of the prison superintendents, defendants Brierley

**1302**

and Rundle. At the outset because Brierley's motion is unopposed and because plaintiff has indicated his willingness to dismiss the case against him, I will grant Brierley's motion to dismiss both the civil rights cause of action and the pendent state claim. As for defendant Rundle, the allegations in plaintiff's Complaint closely resemble those against Superintendent Hendricks, whose Motion for Summary Judgment was granted by an earlier Order. There, I found the allegations, as well as plaintiff's affidavit, to be "patently insufficient" on the issue of the defendant's personal involvement because they were vaguely set forth in broad and conclusory fashion. The same inadequacies are found with regard to Rundle. Thus, the conclusions reached in my prior decision apply with equal force here. I agree with the defendants' statement that: "The only differences separating the three prison superintendents were times and location of plaintiff's incarceration." (Defendant Rundle's Brief in Opposition, p. 4).

Plaintiff argues, however, that Rundle may be found to be personally involved because he approved plaintiff's medical transfer to SCIP. That is, plaintiff contends that because Rundle approved plaintiff's medical transfer, when he allegedly knew or should have known that the facilities at SCIP were inadequate to treat plaintiff's medical condition, this "represents 'a direct causal link' between 'the official conduct of a defendant' and the alleged constitutional deprivation," which results in an Eighth Amendment violation. In support of this argument, plaintiff cites *Fialkowski v. Shapp, supra* at 950 and *Downs v. Dept. of Public Welfare, supra.*

Assuming *arguendo* that these factual contentions are true, the plaintiff has nevertheless failed to set forth a constitutional cause of action against Rundle. As was stated earlier, personal involvement of governmental officials may be founded on actual commission of specific wrongful acts, the direct ordering of subordinates to do wrongful acts, or by having actual knowledge of the commission of such acts and acquiescing therein. It is clear from the following cases that this rule envisions either a degree of wantonness or an element of *scienter* on the part of the superior. "The act or omission by the official must either be intentionally injurious, reckless, callous, grossly negligent, shocking to the conscience, unconscionable, intolerable to fundamental fairness, or barbarous." *Roach v. Kligman, supra* at 525, citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). "When a claim against prison official is based on improper medical treatment, it must depict conduct that is so cruel and unusual as to present a colorable Eighth Amendment claim." *Roach* at 525, citing *Gittlemacker, supra.* The Supreme Court has recently reaffirmed this standard, stating that acts ". . . repugnant to the Eighth Amendment [are those] punishments which are incompatible with the 'evolving standards of decency that mark the progress of a maturing society' (citations omitted) or which involve the unnecessary and wanton infliction of pain . . . .'" (citations omitted). *Estelle v. Gamble, supra*, 429 U.S. at 102, 97 S.Ct. at 290. Clearly, plaintiff has not asserted any contentions regarding Rundle which rise to this level. He has merely stated that Rundle ". . . approved, condoned and ratified the willful and knowing refusal of essential medical services to the plaintiff . . . ." solely by reason of his superior official position in regard to the prison medical staff. Pl. Complaint, ¶ 53. It is clear that Rundle's only connection with plaintiff's claim was the approval of the recommendation that a transfer be made to SCIP for medical reasons. It may be true that if the defendant was under an affirmative duty to investigate the findings of his prison doctors even though he himself had no medical background, his failure to do so may give rise to a colorable Eighth Amendment claim. However, I find no support for this proposition either in the law or in the record of this case. On the contrary, a prison superintendent, absent special circumstances, is or should be entitled to rely on the findings and recommendations of his medical experts. Administratively, the rec-

ord shows that Rundle's approval of the medical transfer of the plaintiff was merely a *pro forma* action. Rundle's deposition establishes that it is the prison Medical Director who makes recommendations for medical transfers, which are then forwarded by the Superintendent to the Deputy Commissioner of Corrections. The Deputy Commissioner, along with the Director of Treatment, then makes the final determination not only as to the propriety of a medical transfer to another SCI, but also as to which SCI in particular is acceptable in terms of the availability of prescribed treatment. (See Deposition of Rundle, pp. 14–23). Thus, Rundle had no discretionary responsibility in the transfer of the plaintiff to SCIP, and should not be liable for that decision. I will therefore grant Rundle's Motion for Summary Judgment on these grounds and consequently find it unnecessary to decide Rundle's defense of sovereign immunity.

Finally, I have concluded that because there is no independent basis of jurisdiction in the instant case, it would be imprudent in the absence of a federal claim against Rundle to hear the pendent state claim against him. The case of *United Mine Workers of America v. Gibbs,* 838 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) supports this conclusion: "Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Gibbs* at 726, 86 S.Ct. at 1139. Nor can the plaintiff try a pendent claim against a defendant who is not subject to liability under federal law merely because other defendants in the case must defend against a federal claim. *Aldinger v. Howard,* 513 F.2d 1257 (9th Cir. 1975), aff'd 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Also see *Rundle v. Madigan,* 331 F.Supp. 492 (N.D.Cal.1971), aff'd sub nom. *Moor v. Madigan,* 458 F.2d 1217 (9th Cir. 1972), aff'd sub nom. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Consequently, I will exercise my discretion to grant Rundle's Motion as to plaintiff's pendent state claim and need not determine his defense of immunity thereunder.

**ORDER**

AND NOW, to wit this 18th day of April, 1977 upon consideration of the defendants' Motions to Dismiss or in the alternative for Summary Judgment:

IT IS HEREBY ORDERED, that

The motions for Summary Judgment of Defendants Brierley and Rundle are GRANTED and judgment entered in their favor and against the Plaintiff.

IT IS FURTHER ORDERED, that

The Motions to Dismiss or in the alternative for Summary Judgment of Defendants Doctors Tucker and Hamburg are DENIED.