Harold R. HOKE, M.D., Plaintiff,

v.

BOARD OF MEDICAL EXAMINERS OF the STATE OF NORTH CAROLINA, Dr. Joseph W. Hooper, Jr., Dr. Bryant L. Galusha, Dr. C. T. Partrick, Dr. Jack Powell, Dr. Charles B. Wilkerson, Jr., Bryant D. Paris, Jr., Dr. Frank Edmondson, Dr. J. Jerome Pence, Dr. David S. Citron, Dr. E. Wilson Staub, Dr. Vernon W. Taylor, Jr., their agents, assigns, successors in interest, and those acting in concert with them, all Individually and in their official capacities, Defendants.

No. C–C–75–001.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 23, 1978.

William H. Elam, Gary A. Davis, Mraz, Casstevens & Davis, Charlotte, N. C., for plaintiff.

Harry C. Hewson, Jones, Hewson & Woolard, Charlotte, N. C., John H. Anderson, Jr., Smith, Anderson, Blount & Mitchell, Raleigh, N. C., for defendants.

## ORDER

McMILLAN, District Judge.

This case is before the court on defendants' motion for dismissal of all damages claims and for summary judgment on the remaining portions of the complaint which seek injunctive and declaratory relief. A hearing was conducted on December 13, 1977, and the parties were given until January 20, 1978, to file such further briefs or evidence as they wished. The motions are now ready for decision.

## A. THE DAMAGES CLAIMS

■ The Board of Medical Examiners is an agency of the State of North Carolina. See N.C.G.S. §§ 90–1 et seq. Defendants correctly contend, therefore, that the Board is not a "person" within the meaning of 42 U.S.C. § 1983 and cannot be subject to a suit for damages. *Huntley v. North Carolina State Board of Education,* 493 F.2d 1016 (4th Cir. 1974); *Alabama Optometric Asso-*

*ciation v. Alabama State Board of Health,* 379 F.Supp. 1332 (M.D.Ala.1974); *cf. Mazzuco v. State Board of Medical Examiners,* 31 N.C.App. 47, 228 S.E.2d 529 (1976), *cert. denied,* 291 N.C. 323, 230 S.E.2d 676 (1977). Although plaintiff alternatively seeks to sue the Board directly under the Fourteenth Amendment, *see Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), this claim must also fail. Such a suit is barred by the Eleventh Amendment. *Jagnandan v. Giles,* 538 F.2d 1166 (5th Cir. 1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083, 45 U.S.L.W. 3822 (1977); *Mauclet v. Nyquist,* 406 F.Supp. 1233 (W.D.N.Y. and E.D. N.Y.1976) (three-judge court), *aff'd* 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977); *cf. Hallmark Clinic v. North Carolina Dept. of Human Resources,* 519 F.2d 1315, 1318 (4th Cir. 1975). The Board has not waived its immunity. Accordingly, the damages claim against the Board itself will be dismissed.

As to the claim of immunity from damages made by the individual Board members, both parties agree that there is no basis for distinguishing between an action brought under 42 U.S.C. § 1983 and one grounded directly on the Fourteenth Amendment. The immunity from suit of judicial and quasi-judicial officers derives from the common law; it is not something peculiar to § 1983 or to any other constitutional, statutory or common law cause of action. *Bethea v. Reid,* 445 F.2d 1163 (3d Cir. 1971).

■ Where the parties vigorously disagree is on the entitlement of the individual Board members to invoke a judicial or quasi-judicial immunity. Such a claim of immunity depends not on the title of the officer but on whether the alleged conduct which gives rise to the complaint involved the performance of a judicial or quasi-judicial function. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972); *cf. Pope v. Chew,* 521 F.2d 400 (4th Cir. 1975) (state parole board members have quasi-judicial immunity in considering pa-

role applications); *Ginger v. Circuit Court for the County of Wayne,* 372 F.2d 621 (6th Cir. 1967) (members of state bar grievance committee and state judges have immunity for actions taken in disciplinary proceedings); *Moity v. Louisiana State Bar Association,* 414 F.Supp. 180, 184 n. 17 (E.D.La.), aff'd 537 F.2d 1141 (5th Cir. 1976) (state bar association entitled to quasi-judicial immunity when passing upon applications for admission to the bar). Plaintiff's contention that only "traditional officers of the court," such as judges, prosecutors and grand jurors, can invoke the immunity must be rejected.

In disciplinary actions under N.C. G.S. § 90–14 the Board of Medical Examiners performs a tripartite function as investigator, prosecutor and adjudicator. Plaintiff's contention that the combination of these three functions in a single body deprives him of due process of law has been rejected by the decision of the three-judge panel in this case. *Hoke v. Board of Medical Examiners,* 395 F.Supp. 357 (W.D.N.C. 1975), relying on *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 45 L.Ed.2d 712 (1975). Although this merger of roles has been held not to offend due process, it does complicate the decision of defendants' immunity claims.

In *Imbler v. Pachtman* the Court recognized that there would be some circumstances where a prosecutor acting in an administrative or investigative capacity would not be entitled to the absolute immunity which attaches to his performance of more strictly prosecutorial duties. 424 U.S. 430, 431 n. 33, 96 S.Ct. 984, 47 L.Ed.2d 128; see also *Helstoski v. Goldstein,* 552 F.2d 564 (3d. Cir. 1977); *Briggs v. Goodwin,* 186 U.S.App.D.C. ——, 569 F.2d 10 (1977); *Weathers v. Ebert,* 505 F.2d 514, 517 (4th Cir. 1974).

The Court recognized that drawing a line between protected and non-protected activities would be difficult, but it left no doubt that the decision to initiate a prosecution was clearly within the scope of the prosecutor's role as a quasi-judicial officer.

Plaintiff bases his liability claim against the individual Board members on the following sequence of events. The court has drawn upon plaintiff's own version of the story as stated in briefs and oral argument on the present motion.

In response to newspaper reports in the *Charlotte Observer,* Dr. Joseph Hooper, then president of the Board, and possibly also Dr. Frank Edmondson, then secretary of the Board, requested on behalf of the full Board that Mr. John H. Anderson, the Board's attorney, undertake an investigation to determine whether charges should be brought against plaintiff. Mr. Anderson had served as the Board's attorney for over twenty years and had frequently conducted preliminary investigations on information received by the Board. The request made was a general one: Anderson was to "find out whatever he could" about the statements made in the press. At the time the newspaper articles appeared plaintiff had two suits pending in this court, one against Presbyterian Hospital of Charlotte and the other against Charlotte Memorial Hospital.

It is plaintiff's claim that Anderson conducted a biased and one-sided investigation, ignoring or refusing to inquire into the existence of evidence which would rebut charges made against plaintiff. Plaintiff complains that Anderson made no effort to speak with him or make a first-hand investigation of his clinic. The investigation was primarily based on newspaper reports, conversations with former employees of plaintiff, and an examination of affidavits and documents filed in the suit involving Charlotte Memorial Hospital.

Discovery has turned up no evidence to date which suggests that individual Board members participated in the investigation other than by reading the original articles which appeared in the newspapers. The members of the Board relied entirely on the report by Anderson and on charges made in the press. Several of them stated in deposition that they had always had full confidence in Anderson and had seen no reason to doubt his word in the case involving plaintiff.

Some time in the late summer of 1974, on the basis of Anderson's oral report to the

Board, the Board voted to prefer charges covering all the alleged incidents about which Anderson had gathered information. Formal charges were drafted by Anderson and by Dr. Hooper and were served on plaintiff; no formal vote was taken on the final draft as a whole or on specific charges. An additional charge was added in the fall of 1974 based on a subsequent report from Anderson concerning a pending misdemeanor prosecution against plaintiff.

It is alleged that the decision to investigate was in part prompted by a letter from the president of the Mecklenburg County Medical Society to the Board's executive secretary concerning plaintiff's fitness to practice medicine. One Board member (Dr. Galusha) recalled this letter, but several others did not. Plaintiff also contends that his attorney in the case against Presbyterian Hospital was informed by the hospital's lawyer that if he persisted with the suit he would probably have his license revoked by the Board. Again, however, discovery has failed to turn up any evidence that this statement emanated from or reflected the views of any of the Board members themselves. The attorney for the hospital had no formal association with the Board, and there is no evidence that he had discussed the Presbyterian case with any individual Board members.

Finally, plaintiff claims that Anderson's investigation was necessarily suspect because his law firm was contemporaneously representing a defendant in another lawsuit filed by plaintiff in the Eastern District of North Carolina and because Anderson's firm also occasionally represented clients at the request of the insurance company which provided coverage for Presbyterian and Charlotte Memorial Hospitals. None of the Board members examined in deposition confessed any knowledge of Anderson's supposed conflicts.

■ The Board's decision to prefer charges is indistinguishable from a prosecutor's decision to initiate a criminal proceeding or a grand jury's decision to return a criminal indictment. For this reason the court concludes that the individual Board members are not answerable in damages for their decision to bring charges against plaintiff.

This determination does not end the matter. Even though the Board members had no personal involvement in the investigation, Anderson did act as the Board's agent. Assuming, but not deciding, that Anderson's investigative activities would be subject to a qualified immunity only, there is a question whether the individual Board members should be held liable under the principle of *respondeat superior* for possible misconduct by the Board's investigator. If so, then damages could be recoverable against Board members if it were found that the investigation was not conducted in good faith and in some way offended a right secured by the Constitution or by federal statute.

■ The status of *respondeat superior* in actions under 42 U.S.C. § 1983 (and presumably also under *Bivens*) has been somewhat clouded by the decision in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). *Compare Roach v. Kligman,* 412 F.Supp. 521, 528 (E.D.Pa.1976) (plaintiff must show "actual participation" or "actual knowledge" of unlawful conduct) *with Shifrin v. Wilson,* 412 F.Supp. 1282, 1301 n. 22 (D.D.C.1976) (negligence or failure to act by supervisor can support liability). In this case all the evidence assembled to date shows that individual Board members had no knowledge or awareness of any of the acts complained of by plaintiff. Furthermore, given the long relationship between Anderson and the Board, it cannot be said that the Board members were negligent in not suspecting in this particular instance that Anderson's investigation might be inadequate or biased. For these reasons the court is unwilling to conclude that the Board members could be held liable solely because Anderson acted as agent or employee of the Board.

More important is the fact that the function performed by Anderson was one separate and distinct from that reserved by the Board members to themselves. If the Board members can be held liable for the investigative acts of their agent, then they

face the prospect of suit in every disciplinary proceeding where it can be alleged that the preliminary investigation was deliberately biased. The Board members would effectively lose the immunity that protects them when performing their quasi-judicial or judicial duties. The only way to preserve the immunity to which Board members are entitled when preferring or hearing charges is to respect the separation of roles between the Board and Anderson which had been worked out over a long relationship. For these reasons the court finds that the Board members are not answerable for any damages arising out of the investigation conducted by John Anderson.

As a final item the court notes that the Board's executive secretary, Bryant D. Paris, Jr., is named as a defendant in this suit. While it does not appear that Paris would be entitled to the protection of any absolute or qualified immunity, a review of the record also leaves the court unclear as to just what Paris' involvement is alleged to have been and on what basis damages against him are sought. The parties are invited to provide enlightenment on these questions. The ruling concerning defendants' motion to dismiss the damages claims will, for now, cover only the claims against the Board itself and against the individual Board members.

## B. MOTION FOR SUMMARY JUDGMENT

On June 6, 1975, the three-judge court which was convened to consider plaintiff's facial challenges to N.C.G.S. § 90–14 ruled adversely to plaintiff on the claims for relief contained in paragraphs 83(1) and 83(2) of the complaint and did not address the claim made in paragraph 83(4), holding that it was not ripe for decision. The case was remanded to this court for further proceedings, including an opportunity for plaintiff to demonstrate the existence of specific bias by the Board members which would entitle him to an injunction against further action by the Board. See *Withrow v. Larkin,* 421 U.S. 35, 58, 95 S.Ct. 1456, 45 L.Ed.2d 712 (1975). On November 3, 1975, plaintiff amended his complaint to allege the existence of specific bias resulting from (a) his instituting litigation against Charlotte Memorial Hospital, (b) the one-sided investigation conducted by John Anderson, (c) the fact that present or past members of the Board are or have been on the staff of Charlotte Memorial Hospital, and (d) the existence of adverse publicity against plaintiff.

On August 16, 1977, defendants moved for summary judgment on the issue of specific bias. They also moved for summary judgment on the claim by plaintiff that he is disabled from presenting witnesses in his behalf at the Board hearing in view of the requirement of N.C.G.S. § 90–14.2 that such hearing be open to the public and in view of the fact that some of his former patients may be unwilling to testify at a public hearing. These two issues will be disposed of in reverse order.

On June 30, 1977, the North Carolina legislature amended N.C.G.S. § 90–16 to permit the Board to take testimony in executive session concerning the treatment of patients who have not consented to public disclosure of such treatment. The amendment further provided that records of such testimony would not be considered public records. The amendment was to be effective immediately upon ratification. In view of this action by the legislature, plaintiff's claim set out in paragraph 83(4) is moot and will be dismissed. See 1977 North Carolina Session Laws ch. 838.

In support of their motion for summary judgment on the issue of bias defendants have offered affidavits from the two present members of the Board who are associated with Charlotte Memorial Hospital stating that they will not participate in the hearing of charges against plaintiff. Defendants have also shown by affidavit that two members of the Board became members after November 1, 1976, and that one member did not join the Board until after the original charges were preferred (but before the amendment adding the charge involving plaintiff's shoplifting prosecution). Defendants have also tendered affidavits from the two remaining Board members who were on the Board in 1974 at

the time charges were preferred; both state under oath that they will be able to afford plaintiff a fair hearing.

While the burden of showing entitlement to summary judgment is on the defendants, once they have offered evidence in support of the motion plaintiff cannot rest upon the bare allegations of his complaint. Aside from the allegations of the amended complaint, plaintiff has produced nothing to substantiate his claim that the pending suit against Charlotte Memorial Hospital will irrevocably prejudice the minds of the Board members against him. The withdrawal of the two present Board members having an association with the hospital is evidence of the Board's good faith and its intention of affording plaintiff a fair hearing. The affidavit from plaintiff's attorney in the Presbyterian Hospital case is not relevant to the issue of present bias. That litigation was long ago terminated adversely to plaintiff. Furthermore, there is no evidence of any adverse publicity involving plaintiff since the original flurry of articles some three or four years ago.

The real substance of plaintiff's amended complaint is the contention that the minds of the Board members have become so fixed by the events of 1974 and by the investigative report of John Anderson that they cannot now afford him a fair hearing. Such a claim certainly cannot be made as to the two members of the Board who joined in 1976; it is only slightly less implausible with regard to the one member who joined the Board after the original charges were preferred in 1974. The caveat in Withrow is a narrow one; it requires a showing that there are "special facts and circumstances" which make the risk of unfairness "intolerably high." 421 U.S. at 58, 95 S.Ct. 1456, 45 L.Ed.2d 712. In the court's judgment plaintiff's amended complaint has progressed very little, if at all, beyond the original claim that the Board cannot grant a fair hearing because it also receives investigative reports and decides to prefer charges. In view of the substantial evidence of good faith presented by the affidavits of Drs. Galusha and Citron and in view of the change in composition of the Board since charges were originally preferred, the court concludes that defendants are entitled to summary judgment on the issue of "special facts and circumstances" constituting bias or prejudice.

## C. PROSPECT

This case is now more than three years old. In light of the ruling of the three-judge court and the decisions made in this order, it appears to the court that the only matters remaining for decision are plaintiff's claims that he may not constitutionally be disciplined on the basis of some of the specific charges brought against him. The parties are requested to confer and attempt to draw a "roadmap" setting out the remaining issues in the case and whether they can be disposed of without trial. If a trial will be necessary, the court reaffirms its intention, expressed in the memorandum of August 16, 1976, of trying Hoke v. Charlotte Memorial Hospital, No. C-C-74-44), first.

IT IS THEREFORE ORDERED:

1. Defendants' motion to dismiss the damages claims against the Board and against the individual Board members is allowed, with the caveat stated above as to Mr. Bryant Paris, Jr.

2. The claim set out in paragraph 83(4) of the complaint is dismissed as moot.

3. Defendants' motion for summary judgment on the issue of specific bias is allowed. It is understood that this ruling disposes of the claim set out in paragraph 83(1) of the complaint.

4. The parties will advise the court by March 15, 1978, of whatever progress they have made in mapping out the remaining issues for decision.