Charles Wing YOUNG, Appellee,

v.

CLINCHFIELD RAILROAD COMPANY, Appellant.

No. 8236.

United States Court of Appeals Fourth Circuit.

Argued Jan. 19, 1961.

Decided April 5, 1961.

E. P. Dameron, Marion, N. C., and H. Dennis Erwin, Erwin, Tenn. (A. K. McIntyre, Erwin, Tenn., on the brief), for appellant.

Harry DuMont, Asheville, N. C. (Uzzell & DuMont, Asheville, N. C., and Warren H. Pritchard, Spruce Pine, N. C., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

This is an action for personal injuries, brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by Charles Wing Young, a former employee of the defendant, Clinchfield Railroad Company. The plaintiff sought recovery for silicosis, attributed to the inhalation of silica in the course of his work for the defendant. Upon a jury verdict, judgment for $6,000.00 was entered in favor of the plaintiff by the United States District Court for the Western District of North Carolina. The defendant's appeal asserts that the trial court erred in three respects: first, it should have directed a verdict for the railroad because the evidence that Young was not provided with a safe place to work was insufficient to raise a jury question; second, the court should have directed a verdict because as a matter of law the plaintiff's action, which was commenced more than three years after he left the defendant's employ, was barred by limitations; and third, in the alternative, assuming that a directed verdict was properly denied, the court should have submitted the issue of limitations to the jury.

## I. Evidence Relating to the Work Conditions.

There was testimony tending to show the following: Young was employed by the railroad from August, 1945, to July 7, 1954, as a member of a section gang engaged in repairing and replacing rails and ties. He worked as a "dead head hunter," that is to say, it was his job to find such portions of spikes as remained in the ties after removal of the spikeheads. In performing his work, the plaintiff was forced to bend over, bringing his face within two feet of the track. He worked immediately behind a cribbing machine which removed ballast from between the ties and an adzing machine which smoothed the ties. The ballast was described by witnesses as consisting of river rock, limestone rock, flint, granite and sand, and there was explicit expert testimony that granite is 34% silica and flint is pure silica.[1] This testimony refutes the defendant's contention that the plaintiff failed to present evidence sufficient for the jury to find the presence of silica in the ballast.

There was further testimony that the cribbing machine crushed the rocks between the ties and both the cribbing and adzing machines stirred up dust which was described as "heavy." The plaintiff testified that he reported these working conditions to his foreman and specifically complained about the "dust on the job." Nevertheless he was never furnished "any equipment or respirator." As a measure of self-help, to guard as well as he could against the dust, which the plaintiff said got into his nostrils and throat, he would tie a handkerchief over his mouth during the work. It was testified by a physician that such exposure could cause silicosis in the plaintiff.

It was also shown that before coming to work for the railroad the plaintiff had worked in a feldspar mine in western North Carolina and had mined and hauled mica.[2] The physician testified that feldspar contains 47% silica, and that if the plaintiff had initially contracted silicosis from such exposure, his condition could have been aggravated by his work for the railroad under the conditions described. There was, to be sure, testimony from which it could be inferred, as the defendant contended, that the plaintiff's disability was unrelated to his employment by the defendant. This could raise, but it does not dispose of, the fact question which was for the jury.

We think the evidence easily sufficient to require the jury to resolve the issue whether the defendant was negligent in failing to furnish a safe place to work. Urie v. Thompson, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

## II. Limitations Questions.

The applicable statute of limitations in an action under the Federal Employers' Liability Act reads as follows: "No ac-

---

1. Part of the expert testimony on this point was as follows:

"A. Many of the various forms of rock which we have in this country have varying amounts of silica. Quartz rock is pure silica. Granite is 34%. Feldspar, I think is 47% silica.

"Q. Doctor, does sand contain silica? A. Well, it depends from what the sand came from. If it were from rock which contained a great deal of quartz, it would contain a great deal, a large proportion of silica. Some sand might come from limestone, and that would not contain silica.

"Q. Well, Doctor, is silica—you said silica is contained in granite. Is that right? A. Yes sir.

"Q. Will you state whether or not silica is contained in flint? A. Well, the word 'flint' is a word that is used largely by people who work in this field and other workers in this field, and I am informed that it is the same as quartz.

"Q. And you have previously testified that quartz is 100% free silica? Is that right? A. That is, pure quartz is 100% silica."

2. It is noteworthy that the plaintiff further testified that when working in the feldspar mine, where there were similar conditions of dust from flint, granite and sand, he was furnished a respirator.

tion shall be maintained under this chapter unless commenced within three years from the date the cause of action accrued." 45 U.S.C.A. § 56. The parties disagree over the meaning of the word "accrued" as it is used in this enactment. The defendant company's position is that as a matter of law the cause of action "accrued" no later than the date on which the plaintiff terminated his employment in July, 1954, and that accordingly, as the present action was not filed until April 23, 1958, it is barred by limitations.

■ Underlying this argument is the theory that a cause of action accrues the moment the injury is *inflicted*. The defendant is willing to recognize that when silicosis is the claimed injury, its onset is so gradual that it cannot be determined with certainty when the injury happened. Nevertheless, the defendant maintains that any injury for which it might have been liable was caused, of necessity, no later than July, 1954. From this the defendant would have us conclude that the cause of action must have accrued by that date and should be barred by limitations. We think that this contention is unsound.

■ Many personal injuries are of such a character that the symptoms become immediately detectable. This is commonly the case when one suffers burns, cuts, broken bones, etc. Almost from the moment that such injury is inflicted the victim is aware of his condition and the wrongful act which caused it. While he may not always know the extent of his disability he is in no doubt that he was injured. Where such knowledge exists upon the occurrence of the injury we have an immediate accrual of the cause of action and the statutory period begins at that time.

On the other hand, other types of injuries are not immediately detectable. Since the effects are usually long delayed, the victim does not know that he has been injured till he observes definite symptoms referrable to the injury. Moreover, when the injury becomes apparent it may be totally impossible to determine precisely when it was inflicted. Silicosis falls in this latter category, and characteristically its onset is insidious and does not come "with the suddenness of lightning," Urie v. Thompson, 1949, 337 U.S. 163, 187, 69 S.Ct. 1018, 1033, 93 L.Ed. 1282. A rule of law that focuses on the occurrence of the wrongful act in determining when the cause accrued is totally inapplicable in such a case.

In Urie v. Thompson, supra, a locomotive fireman who had contracted silicosis brought an action under the Federal Employers' Liability Act and the Boiler Inspection Act. The condition was diagnosed in 1940 and suit was filed on November 25, 1941. The applicable statute of limitations was, as it is today, three years. However, the defendant company interposed the defense of limitations on the theory that, having been exposed to silica dust since about 1910, Urie must have contracted silicosis more than three years before suit was filed and that, therefore, his cause of action was barred by limitations. Simply stated, the defendant company's argument was that Urie's cause of action "accrued" when the silicosis was contracted or when the wrongful act which caused the injury was done, although he did not learn of it till much later. This contention was rejected, the Supreme Court pointing out that to adopt the defendant company's reasoning would mean:

"  *   *   * that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability." 337 U.S. at page 169, 69 S.Ct. at page 1024.

This, the Court stated, would be contrary to "the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time *after*

*notice of the invasion of legal rights."* (Emphasis supplied). 337 U.S. at page 170, 69 S.Ct. at page 1025. Accordingly, the Court held that Urie's cause of action accrued only after his condition had been diagnosed, for only then did he have notice that his legal rights had been invaded.[3]

The Urie case unquestionably demonstrates the Court's view that when the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrued does not depend on when the injury was inflicted. To the contrary, the cause of action accrues only when the plaintiff has reason to know he has been injured. Generally this will be when his condition is diagnosed, unless it is shown that the plaintiff "should have known" at an earlier date that he was injured. 337 U.S. at page 170, 69 S.Ct. at page 1025. It follows that this is so even though the condition was not discovered by the plaintiff until long after the termination of his employment. It is to be noted that the basis of the Supreme Court's decision in Urie was not that the plaintiff filed his suit within three years after leaving his employment, but within three years after his condition was diagnosed as silicosis.[4]

The final point raised by the railroad company is that even if it cannot be said, as a matter of law, that the plaintiff's cause of action accrued not later than his last day of employment, nevertheless the evidence here created a jury issue as to when it did accrue. It argues that, although a medical diagnosis of silicosis

was not made until August, 1956, less than three years before suit was filed, there was evidence tending to show that he should have known his condition earlier. It relies on the fact that he quit his job in the summer of 1954, partly at least because of shortness of breath. The defendant reasons that as the plaintiff came from a mining region where silicosis is fairly common, he is to be charged with knowing that shortness of breath is one of the symptoms of this disease, and hence Young had reason to know as early as 1954 that he had contracted silicosis.

The testimony furnishes no sufficient predicate for this line of reasoning in order to raise a significant issue. Young had been complaining of a number of ailments before terminating his employment in July, 1954. He had kidney trouble as well as shortness of breath, and had but recently undergone surgery for prostatitis. With a complex of symptoms this ignorant layman could not in fairness be charged with a recognition of his silicosis because one of his symptoms was shortness of breath. This is not a specific symptom of silicosis; it is commonly indicative of many other diseases as well. Failure to associate it with silicosis at this early date cannot be treated as fault or neglect or a circumstance sufficient to create a factual issue. Residence in the mining country of West Virginia does not invest one with the expert knowledge or diagnostic skill sought to be attributed to the plaintiff. The sought-for inference could rest on nothing more than speculation.

---

3. Also expressly rejected by the Supreme Court was the defendant's contention that in the computation of the award Urie's recovery should be limited to damages resulting from injuries inflicted during the three years preceding the filing of suit. See 337 U.S. at page 170, 69 S.Ct. at page 1024.

4. We are cognizant of the fact that the Supreme Court of Missouri, the same court in which Urie originated, has, subsequent to the Supreme Court's decision in Urie, held, in another case where the injury claimed was also silicosis, that:

"The statute of limitations does not begin to run against a claim based on a continuing tort until the disease is discovered, unless the unsafe conditions are removed or the claimant quits work. In such a case the statute begins to run on the last day the claimant worked under the unsafe conditions." Farrar v. St. Louis-San Francisco Ry. Co., 1951, 361 Mo. 408, 235 S.W.2d 391, 393.

With deference, we think that the Missouri court's conclusion results from a misinterpretation of the Supreme Court's opinion in Urie.

In spite of frequent sojourns in the hospital where the plaintiff was many times given complete physical examinations, it is noteworthy that not the slightest intimation is found in the record that silicosis was even suspected by any physician who examined him before August, 1956. Moreover, when the plaintiff was X-rayed as late as June, 1956, the physician who read the negative thought that the plaintiff might be suffering from tuberculosis. Not until August of that year, after exhaustive medical tests, did this physician, a specialist in respiratory diseases, diagnose silicosis. A medical judgment that eluded the specialist cannot reasonably be expected from the plaintiff.

■ We find no error in the District Court's refusal to submit to the jury an issue that is without any support in the evidence.

Affirmed.