Linn O. HAMILTON and Leni D. Hamilton, as guardians of Bud Hamilton, a minor,

v.

UNITED STATES PUBLIC HEALTH SERVICE of the Department of Health, Education and Welfare of the United States of America.

Civ. No. 77–5057.

United States District Court, D. South Dakota.

Dec. 18, 1980.

Charles Rick Johnson, Gregory, S. D., for plaintiffs.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

 This matter comes before the Court on the Defendant's motion to dismiss. Defendant claims that the Plaintiffs failed to file their claim within the time provided by 28 U.S.C. § 2401(b) and as a result this Court lacks jurisdiction to hear the matter.

Thus, assuming a tortious act, this Court must answer a two-part question. First, when did Plaintiffs' cause of action arise, and second, did Plaintiffs file their claim within two years of that time. The Eighth Circuit Court of Appeals has, in *Hulver v. United States*, 562 F.2d 1132 (1977), set out the test that should be used in the present case. The Eighth Circuit, citing *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975) stated that:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . .

In medical malpractice actions, the claim "accrues" when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice upon which the cause of action is based. . . *Id.* at 148.

Once the appellant knew of the allegedly negligent acts that caused her injury, she was under a duty to exercise reasonable diligence in bringing suit. *Id.* at 149.

Before a claimant can be expected to have discovered the acts which resulted in his injury he must first be aware of the injury. A plaintiff cannot be expected to file a malpractice action or even investigate the feasibility of such an action when he is unaware of any injury. *Portis v. United States*, 483 F.2d 670 (4th Cir. 1973), *citing Young v. Clinchfield Railroad Company*, 288 F.2d 499, 503 (4th Cir. 1961).

In this case, the Plaintiffs, as guardians, are suing on behalf of their child, Bud Hamilton. They allege that Bud Hamilton has suffered permanent damage to his respiratory system as a result of Defendant's negligence.

It appears that, on February 12, 1973, the Plaintiffs admitted their three month old child to the Public Health Service Hospital in Pine Ridge, South Dakota, because he was apparently suffering from pneumonia. The child was placed in a mist tent. While in the tent it seems that he inhaled silver

nitrate which had been administered accidentally.

After the silver nitrate inhalation had been discovered Bud Hamilton was sent to the Colorado Medical Center in Denver. Leni Hamilton recalls that when she went to Denver she was told by a doctor that as a result of inhaling silver nitrate, her son could have suffered burns in his nose or throat and could also have had too much oxygen get into his blood. She said that she was not told about the possibility of her boy's lungs being burned. She also said that when her son was discharged from the hospital in Denver she was told her son was well and no mention was made of lung damage. (April 7, 1978, Deposition of Leni O. Hamilton, pp. 15, 19.)

During the next few years Bud Hamilton had recurring respiratory problems. On several occasions in 1974, when they took their son to doctors, the Hamiltons were told that their son was all right. There was one occasion in 1974 when Dr. Wolff, a Public Health Service doctor in Rapid City, set up an appointment for Bud Hamilton with some doctors in Scottsbluff, Nebraska. Dr. Wolff had taken an X -ray of Bud Hamilton's chest and told the Plaintiffs that the X–ray showed scar tissue in Bud Hamilton's lungs. After examining Bud, the respiratory specialists in Scottsbluff apparently told Mrs. Hamilton that her son was all right. Mrs. Hamilton testified that in the fall of 1976, when Bud was four years old, she and her husband became convinced that their son had serious breathing problems which prevented him from engaging in activities normal for a four year old. The Plaintiffs observed that their son could not engage in normal physical play without becoming dizzy and short of breath. The Plaintiffs stated that these symptoms were not noticeable when Bud was younger because he had always been a "sleepy baby" and had not attempted strenuous activities. At this time the Plaintiffs took Bud to see a Dr. Kwan in Rapid City, South Dakota. After several visits to Dr. Kwan and after Dr. Kwan had ordered a number of tests on Bud Hamilton Mrs. Hamilton said that she asked Dr. Kwan if Bud's problems could have been caused by breathing silver nitrate and that Dr. Kwan told her that it was a possibility.

In setting out the test to be used in determining when a malpractice action accrues, the Eighth Circuit, in *Reilly v. United States, supra,* cited the Fourth Circuit case of *Portis v. United States, supra. Portis* was a federal tort claims action to recover damages resulting from a child's hearing loss. The hearing loss was caused by medical malpractice which occurred in 1963. However, the loss was not diagnosed as having been caused by the malpractice incident until 1969. In *Portis* the child was given neomycin by an intramuscular injection rather than orally as prescribed. The immediate effect was acute kidney poisoning. The child recovered from the kidney poisoning and, after a hearing test which revealed no hearing damage, was discharged from the hospital. During the following years the child suffered from ear, throat and respiratory infections and a deterioration of her hearing. During these years the child was subject to many tests and treatments given in an attempt to improve her hearing. In 1969, the hearing loss was diagnosed as being related to the 1963 injection of neomycin. The Plaintiffs' claim was made in 1970.

The motion that is now before this Court is essentially the same question addressed by the Fourth Circuit in *Portis.* Even the factual situation in *Portis* is somewhat similar to the case at bar. The Defendant in this case, as in Portis, argues that the cause of action accrued at the time of the accident when, in our case, Bud Hamilton was hospitalized for silver nitrate inhalation. We feel that the Government's argument is, in part, correct. It appears that when Bud Hamilton was hospitalized in Denver, Mrs. Hamilton was told that her son's throat or nose may have been burned or that he may have had too much oxygen in his blood. She, in the exercise of reasonable diligence, should have then discovered the act which may have resulted in such injury. Thus, as to any cause of action related to burns of Bud Hamilton's nose or throat or as a result

of having too much oxygen in his blood, it seems that the two year statute of limitations started to run in 1973. It does not, however, appear that a cause of action accrued as to any lung burns or damage until the fall of 1976. Therefore, the Plaintiffs' claim has been timely made and the Defendant's motion must be denied.

If Plaintiffs knew that the 1973 accident had caused lung damage, then they could not wait until 1976 to determine the full extent of that damage. *Ashley v. United States*, 413 F.2d 490 (9th Cir. 1969). The evidence before the Court does not show that Plaintiffs should have known, prior to 1976, that the 1973 accident was the cause of their son's respiratory problems.

It is clear that Bud Hamilton had respiratory problems prior to the accident. The record indicates that at the time of the accident he was being treated for pneumonia. When he was discharged from the Denver hospital his parents were told that he was all right and no mention was made of lung damage.

The Government argues that the parents should have been aware of the causal relation of the accident to the respiratory problems when Dr. Wolff told them that she saw scar tissues in X-rays of Bud Hamilton's lungs. But Dr. Wolff did not say that the accident could have caused such scarring, she only told Plaintiffs about scarring and suggested an appointment with specialists in Scottsbluff, Nebraska. Considering Bud Hamilton's history there could be many causes for what appeared to be scarring in his chest X-ray. It is unreasonable to expect parents who are without the benefit of a medical education to diagnose the cause of possible lung scarring when Dr. Wolff would not do so. But even if Dr. Wolff raised a suspicion in the Plaintiffs' minds that suspicion would have been quickly extinguished by the doctor's examination of Bud Hamilton in Scottsbluff, Nebraska. In Scottsbluff the doctors, that Dr. Wolff wanted Bud to see, told Mrs. Hamilton that her son was all right. Thus, up to this point, it does not appear that any doctor had told Plaintiffs that their son's medi-

cal problems could have been caused by the inhalation of silver nitrate in 1973. The reasoning of the Fourth Circuit in *Portis* is applicable in this case:

> The record and findings of fact clearly reveal that the unknown factor that delayed instituting this lawsuit was not the nature and extent of Leslie's injury (loss of hearing), but rather what caused it. Colonel Portis could not hope to recover compensation for his daughter's deafness unless the 1963 malpractice was the proximate cause, or one of the proximate causes, of Leslie's loss of hearing. Even if the colonel knew that there was a "distinct possibility" of a causal relationship, knowledge and testimony to that effect is scarcely enough to go to the finder of fact on the question of causation. What is important here is that no one, neither layman nor doctor, diagnosed the hearing difficulty as being caused, or even probably caused, by the 1963 malpractice until the year 1969. *Portis v. United States*, 483 F.2d at 673.

The court then held that the cause of action did not accrue until 1969. In our case, Plaintiffs have said that there was no particular symptom or event which led them to believe their son had suffered permanent respiratory injury. Plaintiffs based their determination that their son had been injured on the totality of experience and symptoms as of the fall of 1976. At that time (fall of 1976) the Plaintiffs were told by Dr. Kwan that their son's respiratory problems could have been caused by the 1973 accident. Because Bud Hamilton's respiratory injury was not apparent until he was approximately four years old and attempting strenuous activities, the accrual of Plaintiffs' cause of action should not commence at the time of initial injury. As the court said in *Young v. Clinchfield R. R.*, 288 F.2d 499, 503 (4th Cir. 1961), *commenting* on *Urie v. Thompson*, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282 (1949):

> [W]hen the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrued does not depend

on when the injury was inflicted. To the contrary, the cause of action accrues only when the plaintiff has reason to know he has been injured.

The rationale expressed by the court in *Young, supra,* is consistent with the tests set out by the Eighth Circuit in *Hulver v. United States* and *Reilly v. United States, supra,* for determining when a federal tort claim malpractice action accrues. The test seems to require knowledge of injury and the allegedly negligent acts which caused the injury. It is the finding of this Court that both elements of the test were first met in the fall of 1976 when the Plaintiffs determined that their son had suffered respiratory injury and when Dr. Kwan indicated that their son's respiratory problems could have been caused by the 1973 accident.