Irvin J. WOODEN, Plaintiff–Appellant,

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant–Appellee.**

No. 87–3799.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1989.

Rodney P. Vincent, Gary R. West, Gertler, Gertler & Vincent, New Orleans, La., for plaintiff-appellant.

William H. Howard, III, Alissa J. Allison, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant-appellee.

Before THORNBERRY, RUBIN, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Irvin Wooden sued the Missouri Pacific Railroad Company pursuant to the Federal Employers Liability Act, 45 U.S.C. § 51 et seq. ("FELA"). Wooden alleged that he had contracted silicosis as a result of work he did for the Railroad, and that the Railroad had negligently failed to provide him with a respiratory mask. The trial judge directed a verdict for defendant, finding that Wooden had failed to present any evidence which would permit an inference that the Railroad was aware of the risk to Wooden. On appeal, we find that there was sufficient evidence to warrant submitting the case to the jury under the FELA's especially permissive standard. We therefore vacate and remand.

## I

Between 1954 and 1961, Irvin Wooden worked for the Texas Pacific–Missouri Pacific Railroad. Wooden operated a tamping machine, a machine powered by compressed air and used to tamp gravel under the Railroad's ties and tracks. Wooden alleges that the machine generated a heavy cloud of silicon dust.

In 1985, Wooden was diagnosed as suffering from silicosis, a lung disease associated with significant exposure to silica dusts. In 1986, Wooden filed suit against the Railroad under the FELA. Section 1 of that statute provides

> Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

To prevail, Wooden thus had to show that he was injured, that the Railroad was negligent, and that the Railroad's negligence caused his injury. For the purposes of the FELA, negligence is defined by federal common law. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949). As the *Urie* Court explained, "negligence, within the meaning of the Federal Employers' Liability Act, attached if respondent 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." The crucial factual question was whether "under the particular conditions described in this case, the defendant furnished plaintiff a reasonably safe place in which to work and such protection in connection with his work against the inhalation of silica dust as would be expected of a person in the exercise of ordinary care under those conditions." 337 U.S. at 178 & n. 16, 69 S.Ct. at 1028 & n. 16, *quoting*

*Sadowski v. Long Island R. Co.*, 292 N.Y. 448, 55 N.E.2d 497 (1944).

At the close of Wooden's case, the trial judge directed a verdict for the Railroad. She reasoned that Wooden had failed to present any evidence which would permit the jury to infer that the Railroad knew or should have known that Wooden's job placed him at risk of contracting silicosis. On appeal, Wooden raises four issues. First, did Wooden present evidence sufficient to permit an inference that a reasonable railroad would have known that Wooden's job with the Railroad subjected him to a risk of severe respiratory ailment? Second, should the district judge have taken judicial notice that it was common knowledge in the late 1950's that working in a cloud of silicon dust without respiratory gear could cause severe lung injury? Third, should the district judge have allowed an expert witness to testify that the dangers of silicosis were well-known to industrial hygienists in the 1950's? Fourth, should the district judge have granted a directed verdict for Wooden in light of similar cases in which juries had found railroads obligated to protect workers from the hazard of silicosis?

## II

■ The district judge ruled that the jury could not reasonably have inferred, on the basis of the evidence presented, that the Railroad knew, or should have known, that Wooden's job exposed him to a substantial risk of silicosis. In this Circuit, a directed verdict against the plaintiff in an FELA suit is appropriate "only when there is a complete absence of probative facts" supporting the plaintiff's position. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 360 & nn. 5–6 (5th Cir.1980); *Boeing Co. v. Shipman*, 411 F.2d 365, 370 (5th Cir.1969) (en banc). This standard is highly favorable to the plaintiff, and recognizes that the FELA is protective of the plaintiff's right to a jury trial.

■ To apply the "complete absence of probative facts" standard, we must review the evidence in the record favorable to Wooden. Wooden himself testified that

the tamping was done by eight-man teams, and that the tampers generated a heavy cloud of dust: "You barely could see what you was doing with the smoke—the dust be going up over your head from the tampers." Wooden also testified that the material in the railroad bed was gravel mixed with sand. He told the jury that he had been provided with a respirator at two other jobs, with the Avondale Shipyards and with Haase Construction Co., that had required him to work in a cloud of sandy dust.

Dr. Yehia Hammad, an industrial hygienist, testified that the Missouri–Pacific trackbed contained gravel that was one hundred percent silica. He also testified that respiratory protection would be essential for someone regularly working in a visible cloud of dust generated by the crushing of silicates. Hammad also stated that government-approved respirators were available in the 1940's and 1950's, and that the best of these respirators were 99.9 percent efficient. Hammad stated that the profession of industrial hygiene had existed throughout this century, and that industrial hygienists were available for hire by industries seeking to maintain a safe workplace.

Finally, Dr. Morton Brown, a physician treating Wooden, testified that in the middle nineteenth century, "we began to get a pretty good idea of the dangerous nature of the dust," and that in the early twentieth century it became obvious that "silicon dioxide, which is white sand, the kind of sand that you see at the beach ... is very very noxious to the lung."

From this evidence, the jury might have inferred that the Railroad knew, or should have known, of the risk to Wooden. From the information that other employers provided respirators to workers who might inhale dust from sand, and that the government had approved various respirators, the jury might infer that the Railroad should have known that workers exposed to sandy dusts need respiratory protection. From the fact that Wooden, together with other members of the tamping team, worked in a heavy, almost blinding cloud of dust generated by sand and gravel, the jury might

have inferred that the Railroad should have known that Wooden worked in a cloud of silica dust: the Railroad might have seen the dust, and known what rocks were on its trackbeds. Together these two inferences would enable the jury to conclude that the Railroad knew or should have known that Wooden needed respiratory protection.

The links in this chain are weak. The jury might quite reasonably have refused to draw the conclusions Wooden asked of them. But we need not determine how the jury should have decided. The only question before us is whether there was a "complete absence of probative facts" supporting Wooden's argument. We find there were some, if very few, probative facts to support his allegations.

It may seem unfair to permit a jury to charge the Railroad with knowledge on so thin a basis. It must be remembered, however, that the Railroad, as well as Wooden, could choose to present more direct evidence about the Railroad's knowledge or lack thereof. Moreover, contrary to the Railroad's argument on appeal, Wooden had no obligation to present evidence of the safety practices of other railroads. One need not show a deviation from industry practice in order to prevail on an FELA claim. *Urie*, 337 U.S. at 177–78 & n. 16, 69 S.Ct. at 1028–29 & n. 16. ("The ultimate question of fact was not what particular means someone else used in similar work. It was whether or not, under the particular conditions described in this case, the defendant furnished plaintiff a reasonably safe place in which to work ...").

The Fourth Circuit's decision in *Young v. Clinchfield Railroad Co.*, 288 F.2d 499 (4th Cir.1961), provides additional support for our conclusion. In *Young*, the court upheld a jury verdict for the plaintiff in an FELA silicosis case. Young worked outside, on the tracks, behind two machines which generated silica dust clouds. The Railroad in this case attempts to distinguish *Young* on the ground that Young had complained to his foreman "about the 'dust on the job.'" 288 F.2d at 501. For that reason, the Railroad contends, Young's employer had notice of the haz-

ards attendant upon Young's work, while the Railroad here may have had no such notice. We disagree. Young's complaint apparently gave his employer notice that he worked in a dust cloud, rather than that he was being put at risk of contracting silicosis. Wooden testified that he worked in a visible, heavy dust cloud, and that testimony alone would permit an inference that the Railroad's agents observed the cloud.

We therefore vacate the order of the district court.

### III

■ This case reaches us in a rather unusual posture. The Railroad moved for directed verdict at the close of Wooden's case. However, the pretrial order apparently would have precluded the Railroad from putting on any evidence had the motion for directed verdict failed. Wooden therefore asks us not only to vacate the verdict in the Railroad's favor, but also to enter a verdict for him.

In order to evaluate Wooden's argument for a directed verdict, we first take up his contention that the district judge should have taken judicial notice that it was common knowledge in the late 1950's that working in a cloud of silicon dust without respiratory gear could cause severe lung diseases. If this contention is correct, then, obviously, the argument for a directed verdict in Wooden's favor is stronger.

Federal Rule of Evidence 201 states that a court shall take judicial notice of any adjudicative fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Wooden asked the trial court to take judicial notice that it was common knowledge in the 1950's that working in silicon dust subjected one to a substantial risk of contracting silicosis. To show that this fact was "not subject to reasonable dispute," Wooden quoted the New York Court of Appeals, which observed in 1944, "It is a matter of common knowledge that it is injurious to the lungs and dangerous to health to work in silica dust, a fact which defendant was bound to know." *Sadowski*, 55 N.E.2d at 500. The United States Supreme Court, quoting *Sadowski*, made the same observation in *Urie*. 337 U.S. at 180, 69 S.Ct. at 1029.

The relevant standard for determining whether the district judge should have taken judicial notice of the proffered fact is announced by *Hardy v. Johns-Mansville Sales Corp.*, 681 F.2d 334, 347–48 (5th Cir. 1982), an asbestosis case. In *Hardy*, this court reversed a district court ruling taking judicial notice of the fact that exposure to asbestosis fiber causes cancer. As we said in that case, "judicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities. The proposition that asbestos causes cancer, because it is inextricably linked to a host of disputed issues ... is not at present so self-evident a proposition as to be subject to judicial notice." 681 F.2d at 347–48.

The essential defect in Wooden's argument is that the fact he asks be noticed is closely joined to an obviously, and legitimately, controverted issue: even if it was common knowledge in 1955 that inhaling silica dusts could lead to lung disease, that does not resolve the crucial question of whether the Railroad should have known that the *particular* concentration of dust to which Wooden was exposed entailed a significant risk of silicosis. To notice the fact that some concentrations of silica dusts were known to be harmful would only confuse the jury's consideration of whether the Railroad did know, or should have known, a particular concentration to be harmful. *See Laster v. Celotex Corp.*, 587 F.Supp. 542, 543–44 (S.D.Ohio 1984) (taking "judicial notice that the inhalation of asbestos *may* cause asbestosis under certain conditions would have no appreciable impact on the length of expert testimony").

More generally, Wooden's argument misuses precedent. Dicta in past decisions, even from the Supreme Court, does not dispose of factual issues in later cases.

The Supreme Court is an authoritative source of federal law, but it is not authoritative on factual questions about industrial knowledge of occupational diseases in the 1950's. We do not, however, mean to say that the Supreme Court decision in *Urie* is irrelevant to that question. The existence of silicosis suits during, and before, the 1950's may, if appropriately introduced into evidence, support an inference that railroads were knowledgable about the hazards of silicosis. But judicial notice of the conclusion yielded by that inference is, as the trial judge correctly ruled, inappropriate.

## IV

Our resolution of the judicial notice question renders easy our disposition of Wooden's request for a directed verdict in his favor. We have outlined a chain of reasoning that might enable a jury to conclude that the Railroad knew of the risk to Wooden. We have also, however, observed that the chain is composed of weak links. A jury might reasonably reject Wooden's argument.

Wooden has also argued that the district judge erroneously excluded certain evidence offered by Dr. Hammad, the industrial hygienist. The trial judge, applying an Eastern District of Louisiana local rule, held that the evidence was barred because not appropriately described by the witness' pre-trial report. The proffered evidence concerned the extent of knowledge about silicosis in the scholarly community. It did not directly show that the defendant Railroad in this case knew, or should have known, that Wooden was at risk of contracting silicosis. As such, the proffered evidence, even if properly admissible, could not justify us in directing a verdict for Wooden. We therefore must remand for a new trial. Because we make such a remand, the question of Dr. Hammad's compliance with the local rule at the first trial becomes moot.

We note also that the defendant Railroad impeached various other elements of Wooden's case, including causation. We do not by this decision express any opinion upon those arguments.

## V

We thus find that Wooden provided the jury with some, if minimal, probative facts in the record to show knowledge on the part of the Railroad. We therefore vacate the judgment of the district court and remand for new trial.

VACATED AND REMANDED.