959 F.2d 231
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Colemon R. MOORE, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INCORPORATED, a corporation, Defendant-Appellee.
William A. HICKS, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INCORPORATED, a corporation, Defendant-Appellee.
 Nos. 91-1819, 91-1848.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1992
Decided: April 7, 1992
 
 ARGUED: Paul J. Passante, GRAY & RITTER, P.C., St. Louis, Missouri, for Appellants.
 Stephen Bennett Caplis, WHITEFORD, TAYLOR & PRESTON, Baltimore, Maryland, for Appellee.
 ON BRIEF: Benjamin A . Neil, Baltimore, Maryland, for Appellants.
 H. Russell Smouse, Lisa A. Lett, WHITEFORD, TAYLOR & PRESTON, Baltimore, Maryland, for Appellee.
 Before WILKINSON, Circuit Judge, WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Colemon R. Moore and William Hicks appeal separate entries of summary judgment against them. Appellants had sued their employer, Appellee CSX Transportation, Inc. (CSX), seeking damages for personal injuries allegedly sustained on the job pursuant to the provisions of the Federal Employers Liability Act, 45 U.S.C.s 51, et seq (FELA).
 
 
 2
 The appeals were consolidated for purposes of briefing and oral argument. The sole issue raised is whether each Appellant's cause of action under FELA was timely filed within the statute's three-year statute of limitations.
 
 
 3
 * Appellant Colemon R. Moore is a fifty-two year old male who has been employed by CSX since 1976. For most of his term of employment with the Railroad he has worked as a carman at the Curtis Bay location in Baltimore, Maryland. The district court found that as early as 1983, Mr. Moore's family members began complaining that he was not paying attention to conversations, and he began asking them to speak more loudly than normal so he could understand what was being said. In Mr. Moore's own words, by 1983 his hearing difficulties had become "kind of embarrassing." Similarly, coworkers indicated that Moore was not hearing them as far back as 1983. Despite these clues, Mr. Moore never sought medical advice; nor did he ever seek any investigation by or assistance from anyone associated with CSX or his union. In his deposition, Moore himself, by at least 1983, attributed his hearing problems to noise exposure on the job.
 
 
 4
 Appellant Moore filed a complaint under FELA against Appellee on February 12, 1991 seeking damages for job-related hearing loss. Appellee CSX filed a motion for summary judgment on July 18, 1991, essentially arguing that Mr. Moore's cause of action was barred by the statute of limitations governing FELA actions. Relying on the facts outlined above, the Hon. William M. Nickerson, United States District Judge, District of Maryland, entered judgment in favor of CSX on September 26, 1991.
 
 II
 
 5
 Appellant William Hicks is a forty-eight year old male who has been employed by Appellee CSX since 1976. During his tenure with the Railroad, he has worked as a carman at various points of time at the Curtis Bay location, the Wicomico Street location, and the Port Covington facility, all in Maryland.
 
 
 6
 Soon after he began working for CSX, Mr. Hicks became aware of the fact that he was experiencing noise exposure on the job, and he asked for hearing protection from his union on more than one occasion. He first sought help in the late 1970's. From 1978 to 1982, Mr. Hicks experienced ringing in the ears which he believed was caused by noise in the workplace. This ringing sensation continued while he worked for CSX at the Port Covington location from 1982 to 1986. Hicks attributed his hearing difficulties solely to noise exposure at work.
 
 
 7
 In addition to the ringing sensation, Mr. Hicks started to suffer other problems as well. At least as early as 1985, he noticed his wife began commenting that he often had bad days in terms of hearing. During that same time period, Hicks' coworkers likewise complained that they had to keep repeating themselves in conversations with him. Appellant Hicks never sought a medical opinion from any physician in connection with his hearing problems.
 
 
 8
 Mr. Hicks filed a complaint under FELA against CSX on February 12, 1991, seeking damages for hearing losses caused by noise exposure at work. Appellee filed a motion for summary judgment on August 14, 1991, which was granted by the Hon. Norman P. Ramsey, District of Maryland, on October 7, 1991 on the grounds that Mr. Hicks' claims were barred by the applicable statute of limitations.
 
 III
 
 9
 The grant of summary judgment is reviewed de novo on appeal. A grant of summary judgment should be affirmed if, after reviewing the pleadings, depositions, interrogatories, and affidavits, the Court is satisfied that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Temkin v. Frederick County Commissioners, 945 F.2d 716, 718 (4th Cir. 1991) (citing Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984)).
 
 
 10
 Although the evidence presented must be viewed in the light most favorable to the party opposing summary judgment, that party must nevertheless satisfy his burden of proof by offering more than a mere scintilla of evidence. The party opposing summary judgment must produce evidence sufficient for a reasonable jury to find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Absent such proof, summary judgment should be entered in favor of the movant.
 
 IV
 
 11
 On appeal, Moore and Hicks argue that the courts below erred in granting summary judgment after they produced sufficient evidence to create an issue of fact for a jury on the question of the date of accrual of their causes of action. Specifically, Appellants contend that a railroad worker, without specialized medical education and training, could not possibly know the origin of his hearing loss until such cause could be properly determined by expert medical opinion. This argument, however, is without merit.
 
 
 12
 The statute of limitations within FELA is explicit. 45 U.S.C. § 56 provides that: "No action shall be maintained under this Act unless commenced within three years from the day the cause of the action accrued." As in most statute of limitations controversies, the crux of the dispute before this Court centers around when each Appellant's cause of action "accrued."
 
 
 13
 Under FELA, when an accident is not the cause of the injury, the "discovery rule" is applied. Under this rule, an action accrues when the plaintiff knew or should have known of his injury and its cause. Urie v. Thompson, 337 U.S. 163 (1949); Young v. Clinchfield R.R. Co., 288 F.2d 499 (4th Cir. 1961). In a more current opinion, the Supreme Court, in the context of the Federal Tort Claims Act, expanded and refined the definition of accrual for statute of limitations purposes. United States v. Kubrick, 444 U.S. 111 (1979). In Kubrick, the Court held that a cause of action accrues "when a plaintiff knows both the existence and the cause of his injury and not at a later time when he learns that the acts inflicting the injury may constitute [negligence]." Townley v. Norfolk & Western Ry., 887 F.2d 498, 500 (4th Cir. 1989) (citing Kubrick, 444 U.S. at 122-23). Both Kubrick and Urie are examples of the application of the discovery rule. Townley, 887 F.2d at 501.
 
 
 14
 In Townley, this Court recently applied the"discovery rule" as formulated in Urie and restated in Kubrick and held that the FELA statute of limitations begins to run as soon as the plaintiff knows or should know of the existence of the injury and its cause. Quoting Young v. Clinchfield R.R. Co., the Townley Court explicitly rejected the Appellants' contention in this case that limitations on their claims should not begin to run until their medical conditions are formally diagnosed. Id. "[T]he statute begins to run when a person's condition is diagnosed, 'unless it is shown that the plaintiff "should have known" at an earlier date that he was injured.' " Id. (quoting Young, 288 F.2d at 503) (emphasis added).
 
 V
 
 15
 Following the principles stated above, it is clear that the judgment of the district courts should be affirmed in regards to Mr. Moore and Mr. Hicks. Although both Appellants maintain that CSX has failed to show that they were aware of the cause of their injuries more than three years before they filed suit, their own testimony belies this argument.
 
 
 16
 In deposition, Appellant Moore clearly stated that as early as 1983, he noticed he had a hearing problem, both at work and at home, and that he would ask people to speak louder as a result of these difficulties. Because he was only subject to excessive noise at his workplace, Moore believed that the hearing difficulties he was experiencing were directly attributable to his employment.[1]
 
 
 17
 Similarly, Appellant Hicks admitted that beginning as early as 1978 and continuing through the early 1980's, he experienced ringing in the ears and other hearing problems which he attributed to noise on the job.[2] Thus, well before they filed their complaints on February 12, 1991, the Appellants were aware or should have been aware of their injuries and the cause of these injuries. Under both Urie and Kubrick, once their hearing problems manifested themselves and once Appellants attributed these difficulties to their respective employments, both Moore and Hicks had to bring suit under FELA within three years or be forever barred from doing so. Because they failed to file their complaints within the requisite time period, summary judgment in favor of Appellee CSX in each case was proper. Accordingly, the judgments of the district courts in regards to both Appellant Moore and Appellant Hicks are
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In his deposition, Moore testified as follows:
 Q.But it [the hearing problem] reached the embarrassing point in 1983; am I correct?
 A.Yes, somewhat at that time.
 Q.At that time in 1983 were you subjected to any other source of noise, to your knowledge, other than the job, other than the railroad job?
 A.Not to my knowledge.
 ....
 Q.So if you had problems in 1983 understanding people, I take it you would attribute those problems to the job?
 A.Yes, right.
 (Moore J.A. 24.)
 
 
 [2]
 Appellant Hicks testified as follows:
 Q.You did have ringing in the ears?
 A.Did have ringing, yes.
 Q.In the '78 to '82 timeframe?
 A.Yes....
 Q.Now, did you know during that period of time or suspect that that was from work? In other words, was there any other noise source other than work that you were exposed to?
 A.No.
 ....
 Q.Let's say after you worked there for some six months, let's talk '79, by the time you now worked there for six months, how often would you have that ringing sensation when you got off of work of the five days a week? Would you have it once a week, twice a week?
 A.Mostly every day.
 ....
 Q.And you felt that was from work because there was no other noise source that you were exposed to?
 A.I wasn't exposed to no other noise.
 (Hicks J.A. 39-40.)